UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STONCOR GROUP, INC., et ano.,

                Plaintiffs,

      -against-

PEERLESS INSURANCE COMPANY,

              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: _8/26/2022_ |

16-cv-4574 (LAK)

**MEMORANDUM OPINION**

Appearances:

          Michael B. Sena
          HERZFELD & RUBIN, P.C.
          *Attorneys for Plaintiffs*

          Marshall Todd Potashner
          JAFFE & ASHER LLP
          *Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

      Flooring systems manufacturer Stoncor Group, Inc. ("Stoncor"), together with its insurer, First Continental Insurance Co. ("First Continental"), brought this action against Peerless Insurance Company ("Peerless") in connection with state court litigation over a slip-and-fall accident that occurred in the fifth-floor kitchen of the Grand Hyatt Hotel in Manhattan in 2006. The complaint alleges that Peerless – whose insured, Surfacesys, Inc. ("Surfacesys") installed the Stoncor flooring system at the Grand Hyatt – breached its duty to defend Stoncor in that action,

2

since Surfacesys had named Stoncor as an additional insured under its comprehensive general liability ("CGL") policy pursuant to a Master Installation Agreement (the "Master Agreement"). This is the Court's decision after a bench trial on the issue of liability.

## *Facts*

### *Surfacesys Becomes an Exclusive Stoncor Installer*

Stoncor floors are installed only by installation contractors who enter into agreements with Stoncor.

On or about September 2004, Jeffrey Caswell, a one-time employee of a Stoncor installation contractor, advised Stoncor that he was starting a new floor installation business and asked whether his new company, Surfacesys, might become one of Stoncor's exclusive contractors, Stoncor returned three documents in blank: a new contractor information form, a certificate of insurance form, and the Master Agreement. The Master Agreement at that time was a single standardized contract. Stoncor approved no prospective installation contractor "until . . . execution of the Master Installation Agreement."[1]

On or about September 16, 2004, Stoncor received from Surfacesys via fax a copy of the Master Agreement purportedly signed on behalf of Surfacesys by "Jeffrey Caswell," which Stoncor then executed and returned to Surfacesys approximately two weeks later. Surfacesys thus became an approved Stoncor installer and thereafter did approximately three hundred installation projects for Stoncor between September 27, 2004 and September 2006. One of those projects was

---

[1]

See Pl. Ex. 39, ¶ 5; Trial Tr. at 56.

installation of kitchen floors at the Grand Hyatt Hotel (the "Hyatt Project") in September 2006.[2]

*Surfacesys's Insurance Policy*

The Master Agreement obligated Surfacesys to "maintain full and complete insurance . . . until final acceptance of its work," to "have [Stoncor] listed as a named insured," and to file "certificates of insurance . . . with [Stoncor] five days prior to scheduled commencement " of any contract work.[3]

Surfacesys's CGL carrier was Peerless. Its Peerless policy imposed upon Peerless the "duty to defend the insured" in suits seeking damages because of bodily injury or property damage.[4] The Paragraph I endorsement to that policy amended the definition of the "insured" to include "any person or organization" that Surfacesys agreed to add "in writing in a contract, agreement, or permit."[5] In due course, Surfacesys's broker issued certificates of insurance to Stoncor.[6]

---

[2] At trial, Peerless sought to introduce testimony that Surfacesys's "last day of work" on the Hyatt Project was September 8, 2006. Plaintiff's position is that installation remained ongoing through at least September 19, 2006, the date of the events at issue in *Arias. See* Trial Tr. at 20-21.

[3] Master Installation Agreement [Pl. Ex.15], at 1-2.

[4] Commercial General Liability Coverage Form [Pl. Ex. 10] ¶ 1.

[5] Commercial General Liability Extension Endorsement [Pl. Ex. 10] ¶ I.

[6] *See* Certificates of Insurance [Pl. Ex. 13]. Peerless's objections to the admissibility of the certificates on authenticity, hearsay, and other grounds are without merit. In view of Caswell's testimony that he told Surfacesys's broker to issue a certificate of insurance in favor of Stonhard, the evidence that all Stonhard contractors were required to complete a standardized certificate of insurance form, and the familiar format of the certificates themselves, the Court finds that the certificates offered by First Continental are authentic.

*The Arias Action, Stoncor's Tender, and Peerless's Failure to Defend*

On the night of September 19, 2006, a Grand Hyatt kitchen employee, Cesar Arias, slipped and fell on the Stoncor-manufactured flooring system that had been installed by Surfacesys. At the time of the fall, Arias had been walking across the floor to take a tray of dishes to a dish washing machine. He subsequently brought a tort action in a New York State Court (the "Arias Action"), eventually naming both Stoncor and Surfacesys as defendants.[7] Arias alleged both "defective . . . design" of dangerous flooring and "negligent . . . installation" of the newly tiled kitchen floor.[8]

On or about May 13, 2008, Stoncor demanded that Peerless assume Stoncor's defense in the Arias Action. Peerless acknowledged receipt of the demand but did not provide Stoncor with a defense. First Continental, Stoncor's carrier, stepped in to provide Stoncor with a defense.

*Prior Proceedings*

Stoncor filed its original complaint in this action on June 16, 2016. It alleged two

---

On summary judgment, Peerless argued that "[w]ith respect to the Certificate of Liability Insurance, plaintiffs ignore that neither Surfacesys nor Stoncor signed the certificate and Peerless did not issue the certificate." Dkt 50, at 6. But the certificates would be admissible even if the Court accepted that position. *See* Fed. R. Evid. 901(b)(4); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 691-93 (S.D.N.Y. 2014). Peerless advanced no persuasive argument that the certificates of insurance do not fall within the business records exception. Stoncor required certificates of insurance from all of its approved installers pursuant to its standardized Master Agreement. In view of Stoncor's standardized on-boarding process and the nature of its business, the Court does not require qualified witness testimony or certification to admit these documents. *See Donziger*, 974 F. Supp. 2d at 691-92. In any event, the admissibility of the certificates ultimately is immaterial to this decision.

[7]  *Arias v. Stonhard, Inc.*, Index No. 301716/08 (N.Y. Sup. Ct. Bronx Cnty.).

[8]  Verified Compliant ¶¶ 5, 7 (Dkt 41-3), *id.; see also* Bill of Particulars ¶ 13 (Dkt 41-21), *id.*

causes of action seeking (1) a declaration that Peerless was "required to defend, indemnify, and hold [Stoncor] harmless" in the Arias Action and (2) compensatory damages from Peerless representing "the amount of legal fees, expenses and costs in the Arias Action . . . as well as future additional defense costs and expenses."  On June 23, 2021, this Court adopted Magistrate Judge Gorenstein's report and recommendation[9] that the first cause of action be dismissed on the ground that monetary damages would be sufficient to make plaintiffs whole in these circumstances, thus obviating any need for declaratory relief.  Importantly, the parties reported on December 7, 2020 that the Arias Action had been resolved by a First Department ruling that "reversed the lower court and granted summary judgment  to the defendants dismissing the underlying personal injury action."[10]

Pursuant to the agreement of the parties shortly before trial, Stoncor's claims were dismissed and the case proceeded on behalf of First Continental against Peerless.[11]

### *Discussion*

First Continental asserts that Peerless breached its obligation to defend Stoncor in

---

[9]

Dkt 129.

[10]

*See* Status Report [Dkt 104], at 2; *Arias v. Stonhard, Inc.*, 188 A.D.3d 590, 590–91 (1st Dept. 2020).

[11]

Tr., Mar. 1, 2022 [Dkt 170], at 14-15; Dkt 122.

The agreement, briefly summarized, was to allow Peerless to renew its motion for summary judgment on the conditions that it would consent to an amendment dismissing Stoncor and permitting First Continental proceed, without a jury, on an equitable contribution theory rather than a breach-of-contract claim should the case go forward.  The agreement secured also to Peerless the ability to raise a laches defense in the event of trial. *See* Dkt 170 at 14-16.

the Arias Action as an "insured" under Surfacesys's CGL policy. Peerless rejoins that it had no such

duty because Surfacesys had not "executed" the Master Agreement as of the time of the accident.

In any case, it argues, Stoncor was not entitled to a defense by Peerless under the terms of the

Surfacesys policy.

*Stoncor Was an "Insured" Under the Surfacesys CGL Policy*

        The Surfacesys CGL policy issued by Peerless contains the following endorsement:

> "I. ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT
> Paragraph 2. under SECTION II – WHO IS AN INSURED is amended to include
> as an insured any person or organization when you [*i.e.,* Surfacesys] and such person
> or organization have agreed in writing in a contract, agreement or permit that such
> person or organization be added as an additional insured on your policy to provide
> insurance such as is afforded under this Coverage Part. Such person or organization
> is an additional insured only with respect to liability arising out of:
>
>     a.    Your ongoing operations performed for that person or organization;
>              or Premises or facilities owned or used by you.
>
>     b.    With respect to provision 1.a. above, a person's or organization's
>              status as an insured under this endorsement ends when your
>              operations for that person or organization are completed."

        As its plain text makes clear, Surfacesys's policy extended to any organization

Surfacesys agreed to add as an additional insured "in writing in a contract, agreement, or permit"

with respect to liability arising out of Surfacesys's ongoing operations until those operations were

completed. Peerless does not deny that the terms of that Master Agreement governed the

relationship between Surfacesys and Stoncor at the time of the accident. Indeed, Caswell himself

testified that the Master Agreement was in effect when the accident occurred in September 2006.[12]

---

    12

        Caswell Dep. (Dec. 13, 2016), at 39; *see also* Def.'s Post-Trial Memorandum of Law [Dkt
        190], at 23-24.

7

Rather, Peerless's primary defense essentially is procedural, indeed, one might say tendentious. Iit claims that the Master Agreement was not "executed" as required by the policy because the "Jeffrey Caswell" signature was not personally affixed by Mr. Caswell.[13]

To be sure, Surfacesys's CGL policy makes clear that the above-quoted endorsement will not apply "[u]nless the written contract or agreement has been executed, or permit has been issued, prior to the [injury]." Still, even if the Court accepted Peerless's argument that the word "executed" – a term the policy does not define – necessarily means "fully performed" or "signed . . . by all parties,"[14] the evidence before the Court leaves no doubt that the policy requirement was satisfied. It is undisputed that Stoncor received a signature-bearing copy of the Master Agreement via fax on or about September 16, 2004. Although Mr. Caswell testified that the "Jeffrey Caswell" signature affixed to it was not affixed by him, he testified also that he did not recall whether he had authorized someone else to sign it on his behalf. Moreover, as plaintiff observes in its papers, Surfacesys identified this very Agreement as the contract governing its relationship with Stoncor in connection with the Hyatt Project in the Arias Action – without disclaiming the validity of any signature.

There is considerable evidence, including from Mr. Caswell's deposition, that every Stoncor installer nationwide was required to execute that agreement before performing any work on Stoncor projects. Surfacesys already had worked on hundreds of Stoncor projects by September

---

13

See Def.'s Post-Trial Memorandum of Law [Dkt 190], at 27-28 (insisting that "it matters not whether Surfacesys operated under the Master Installation Agreement, or whether Surfacesys considered the Master Installation Agreement controlling, or even whether [it] was binding on Surfacesys as a matter of law. The controlling and determinative question is whether it was *signed* by Surfacesys") (emphasis added).

14

*Id.* at 27.

8

2006.[15]  And even if the Master Agreement was not signed manually by Mr. Caswell, as Peerless insists was required under the Surfacesys policy, the Court easily would find that the document independently extends coverage to Stoncor by "permit," as it is plain that Surfacesys could not have performed any installation work except as provided under that document's terms.[16]  Moreover, that certificates of insurance issued in favor of Stoncor in connection with the Hyatt Project suggests insurance coverage here.[17]  In view of all the evidence introduced at trial, the Court regards as meritless any suggestion that Peerless did not owe Stoncor a duty to defend because there is testimony suggesting that the signature on the operative Master Agreement was "not [Caswell's]" and that Caswell did not recall whether he had authorized someone else to sign on his behalf.[18]  In sum, the Court finds that Surfacesys named Stoncor as an additional insured through a fully executed written agreement as contemplated in the former's CGL policy – and that it did so prior to the time of the accident.  Thus, Stoncor was an additional insured subject to the qualifications set forth in Paragraphs 1a. and 1b. of the endorsement.

*Peerless Was Obliged to Defend Stoncor Against the Claims Asserted in* Arias

Having determined that Stoncor was an insured under Surfacesys's Peerless CGL policy by execution of the Master Agreement, the Court is left only with the question of whether the

---

[15]
    *Id.* at 40.

[16]
    "Permit" also is undefined in the policy.  In any event, under the Surfacesys policy a permit need not be "executed" to extend coverage to an additional insured – it need only "issue[]."

[17]
    *See, e.g.*, *Horn Maint. Corp. v. Aetna Cas. & Sur. Co.*, 225 A.D.2d 443, 444 (1st Dept. 1996).

[18]
    Caswell Dep. (May 9, 2016), at 13.

types of personal injury claims asserted against it in *Arias* were excluded from coverage.

### Relevant New York Law

As with all contracts, unambiguous terms in an insurance policy are "given their plain and ordinary meaning."[19]  Whether or not a writing is ambiguous "is a question of law to be resolved by the courts."[20]  Although courts generally are required to consider extrinsic evidence of intent before applying the doctrine of *contra proferentem*,[21] this is not so when the matter at issue is limited to the insurer's duty to defend.[22]  Any ambiguity as to an insurer's duty to defend will be resolved in favor of the insured, "particularly when found in an exclusionary clause."[23]

Under New York law, "it is axiomatic that the duty to defend is 'exceedingly broad[.]'"[24]  Accordingly, an insurer's promise to defend, even where provided in a policy

---

[19]  *McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) (citations and internal quotation marks omitted).

[20]  *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (1990).

[21]  *See, e.g., Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 n.2 (2d Cir.1983) (explaining that the doctrine of *contra proferentem* operates only "after all aids to construction have been employed but have failed to resolve the ambiguities in the written instrument").

[22]  *See Mack-Cali Realty Corp. v. Peerless Ins. Co.*, 115 F. Supp. 3d 449, 456 (S.D.N.Y. 2015).

[23]  *Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.*, 457 N.E.2d 761, 764 (1983); *see Mack-Cali Realty Corp.*, 115 F. Supp. 3d at 456; *see also Int'l Bus. Mach. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (holding that "[a]ny ambiguity as to the insurer's duty to defend is resolved in favor of the insured" under both New York and California law).

[24]  *Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 424 (2d Cir. 2002) (quoting *Cont. Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 648 (1993)).

denominated "liability insurance," is regarded essentially as "litigation insurance."[25] To determine whether an insurer has a duty to defend, the Court examines only "the policy language and the allegations of the complaint" to determine whether "the underlying complaint alleges *any* facts or grounds which bring the action within the protection purchased."[26] An insurer "must defend whenever the four corners of the complaint suggest . . . a reasonable possibility of coverage,"[27] regardless of whether facts outside the complaint suggest that the plaintiff ultimately cannot recover.[28] Indeed, so long as one or more claims asserted against the additional insured "may rationally be said to fall within policy coverage,"[29] the insurer is obligated to defend the entire

---

[25]
> *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984) (quoting *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 326 (1974)).

[26]
> *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165-66 (2d Cir. 1998) (internal citations and quotation marks omitted) (emphasis added).

[27]
> *Cont'l Cas. Co.*, 80 N.Y.2d at 648 (1993).

[28]
> *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 61 (1991) ("It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered."); *Cont'l Cas. Co. v. JBS Construction Mgmt.*, No. 09 Civ. 6697 (JSR), 2010 WL 2834898, at *3 (S.D.N.Y. July 1, 2010) ("New York law does not permit [an insurer] to use the extrinsic fact of [insured's] termination of . . . services to curtail its duty to defend under the policy.").

[29]
> *Bausch & Lomb Inc. v. Lexington Ins. Co.*, 414 F. App'x 366, 370 (2d Cir. 2011) (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir. 2001)); *see Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) ("If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action."); *see also Town of Massena v. Healthcare Underwriters Mutual Ins. Co.*, 98 N.Y.2d 435, 443-44 (2002) (noting that it is immaterial whether "the complaint against the insured asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions").

action, even where the claim is "predicated on debatable or even untenable theory."[30]  Under New York law, insurers are obligated to "provide a defense against even wholly frivolous . . . claims" when "the allegations fall within the policy's coverage."[31] The rules of construction applicable in this context apply equally where the coverage is sought by an additional insured. [32]

### *Surfacesys's CGL Policy with Respect to "Ongoing Operations" Is Exclusory*

Surfacesys's CGL policy, through the Paragraph I endorsement, extended $1 million in personal injury coverage to Stoncor as an additional insured, but "only with respect to liability arising out of . . . [Surfacesys's] ongoing operations performed for that person or organization; or Premises or facilities owned or used by [Surfacesys]." Peerless takes the position that the "ongoing operations" language defines coverage, *viz.*, that Stoncor is not an "additional insured" on the ground that the *Arias* complaint did not allege liability arising out of Surfacesys's ongoing operations.  Plaintiff counters that the "ongoing operations" limitation – like the "completed operations"[33] and "intended use" clauses – is a policy exclusion.

---

30
       *Schwamb v. Fireman's Ins. Co. of Newark, New Jersey*, 41 N.Y.2d 947, 949 (1977).

31
       *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 273 (2d Cir. 1987).

32
       *See Mack-Cali Realty Corp. v. Peerless Insurance Co.*, 115 F. Supp. 3d 449 (S.D.N.Y. 2015).

33
       Although both parties refer to a "completed operations" provision, the relevant portion of the policy endorsement does not use that exact phrase.  The relevant portion reads: "2. Th[e] endorsement provision does not apply . . . b. [t]o 'bodily injury' or 'property damage' occurring after: (1) All work, including materials, parts or equipment furnished in connection with such work, in the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed." Commercial General Liability Extension Endorsement [Pl. Ex. 10] ¶ I(2).  For

12

The parties' disagreement as to whether this enumeration of covered liabilities in the policy endorsement is definitional or exclusory is a familiar one. It conceivably matters to the extent that New York insurance law assigns the burden to prove coverage to the insured, while it is the insurer's burden to prove that it has been relieved of an obligation by a policy exclusion. Of course, the question itself reflects a potential ambiguity in the Surfacesys policy which, even if it were not resolved by the established custom and usage of the term "ongoing operations" in New York insurance law, would require a construction favoring Stoncor.[34] As previously explained, the Court concludes that Stoncor became an additional insured when Surfacesys "agreed" to the Master Agreement. Thus, notwithstanding Peerless's citation to a recent district court case treating "ongoing operations" language as definitional, here it is plain that the term exerts no force whatever on whether or when Stoncor came within the ambit of Surfacesys's CGL policy.[35]

In any case, even if "ongoing operations" were a coverage-defining term under the policy, the *Arias* claims against Stoncor still would have obligated Peerless to defend Stoncor. To be sure, the parties disagree emphatically as to the correct interpretation of "ongoing operations" in

---

[34]  ease of reference, the Court adopts the "completed operations" shorthand employed by the parties.

In New York, "[i]nsurance provisions that cover only ongoing operations or, conversely, do not cover completed operations, have routinely been treated as policy exclusions." *492 Kings Realty, LLC v. 506 Kings, LLC*, 88 A.D.3d 941, 943 (2d Dept. 2011) (collecting cases); *see Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 69 (2d Cir. 2018) ("In the absence of guidance from the policy language, courts ask whether a body of law or an established custom or usage provides a definition. 'For it is quite possible that even where a contract does not define a particular—and potentially ambiguous—term, a body of state law or an established custom fills in the gaps left by the drafters.'") (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 617 (2d Cir. 2001)).

[35]  *See United States Underwriters Ins. Co. v. Image By J&K, LLC*, 335 F. Supp. 3d 321 (E.D.N.Y. 2018).

the endorsement.  Plaintiff argues that the requirement was satisfied by virtue of the fact that Surfacesys, at the time of the underlying action, was an exclusive Stoncor installer with "6-7 Stonhard projects pending at any given time."  Peerless counters that "ongoing operations" essentially is circumscribed by active work on the individual project at issue.  Nevertheless, it is well established that "[t]he term 'ongoing operations' is interpreted broadly in New York" to include more than the actual construction or other "active work."[36]  "Ongoing operations" can encompass also things like lapses of time between project phases or the time between physical construction and final post-work inspections, for example.[37]  Indeed, the Second Circuit expressly rejected one insurer's "narrow definition of the phrase 'ongoing operations'" because the insurer's definition "connot[ed] actions currently in progress such as 'active work.'"[38]

Still, the Court would not have to determine whether Surfacesys actually had completed its share of the work on the Hyatt Project at the time of the accident in order to determine whether Arias's claims against Stoncor brought Stoncor within Surfacesys's CGL coverage under either party's proposed definition..  The First Department's 2020 *Arias* ruling obviated the question of indemnity, narrowing this case to Peerless's alleged breach of the duty to defend.  Accordingly, the Court must determine only whether the allegations that appeared within the four corners of the *Arias* complaint "may rationally be said to fall within policy coverage,"[39] as the duty to defend

---

[36]

*Town of Fort Ann v. Liberty Mut. Ins. Co.*, 69 A.D.3d 1261, 1262-63 (3d Dept. 2010).

[37]

*Id.* at 1263.

[38]

*Wausau Underwriters Ins. Co. v. Cincinnati Ins. Co.*, 198 F. App'x 148, 150 (2d Cir. 2006) (internal quotation marks omitted).

[39]

*Hugo Boss Fashions, Inc.*, 252 F.3d at 620 (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (1984)).

14

attached so long as "the underlying complaint *alleges* any facts or grounds which bring the action within the protection purchased."[40]

In sum, even if "ongoing operations" were a coverage-defining term, there could be no serious argument that the *Arias* allegation failed to trigger Peerless's "exceedingly broad" duty to defend Stoncor. Peerless's view that the Arias Action featured "no allegation that [Arias] was injured by the process of the installation" is supported only by "an affirmation submitted in support of Stoncor's motion for summary judgment in the Underlying Action" and material that Peerless refers to as "judicial admissions" of Mr. Arias's design-defect theory at various stages of that litigation.[41] But that is untenable on its face.

The first and most obvious problem is that all such documents are outside the four corners of the complaint. Moreover, the more significant problem with Peerless's argument is that it plainly is contradicted by the *Arias* pleadings. The *Arias* complaint clearly alleged that Stoncor was "negligent in the installation of the floor." Similarly, the bill of particulars asserted that Stoncor was "negligent" in the "installation of the newly tiled kitchen floor" and that it 'fail[ed] to install a tiled floor that was waterproof and slip proof." Such allegations are rationally related to the terms of the policy and presented at least a reasonable possibility of coverage. Accordingly, Peerless had a duty to defend against them – and the balance of the case – no matter how meritless or untenable Mr. Arias's theory of negligent installation may have been. The notion that Peerless can justify its refusal to defend Stoncor by relying on a factual record subsequently developed in that very

---

40

*First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165-66 (2d Cir. 1998) (internal citations and quotation marks omitted) (emphasis added).

41

Dkt 190 at 8.

litigation defies logic as much as it defies New York insurance law.

> *Peerless Cannot Escape Its Duty to Defend on*
> *Account of "Completed Operations" or "Intended Use"*

The final remaining issue is whether Peerless was relieved of its duty to defend Stoncor by virtue of the policy exclusions. Although Peerless attempts to argue that the much-emphasized "completed operations" and "intended use" clauses also are definitional, there is no reasonable interpretation of the policy that would view these terms as anything other than exclusions. The Paragraph I endorsement explains that Stoncor's status as an additional insured terminates either when

> "(1) [a]ll work, including materials, parts or equipment furnished in connection with such work, in the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or (2) [t]hat portion of [Surfacesys's] work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project[.]"[42]

Both "completed operations" and "intended use" operate only with reference to an existing insurance obligation. Plainly read, the endorsement uses those terms to identify the points at which otherwise-covered claims fall out of the policy.[43]

---

[42]      Commercial General Liability Extension Endorsement [Pl. Ex. 10] ¶ I(2).

[43]      And another decision of this Court determined with respect to a substantially identical Peerless CGL policy: "Regardless of whether the provision is a definition or an exclusion, it serves the same function: to exclude from coverage liability that arises after a certain point. Therefore, the Court will treat the 'intended use' provision as an exclusion. *See Westview Assocs. v. Guaranty Nat. Ins. Co.*, 95 N.Y.2d 334 (2000) ('At the very least, [the insurer's] interpretation presents an ambiguity in the umbrella policy which must be resolved against the insurer, as drafter of the agreement')." *Mack-Cali Realty Corp. v. Peerless Ins. Co.*, 115 F. Supp. 3d 449, 453 (S.D.N.Y. 2015).

16

In order to relieve itself of the duty to defend, Peerless was bound to satisfy the heavy burden of showing "that the exclusion is subject to no other reasonable interpretation and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision."[44] The question here thus is whether Peerless has shown that *the Arias pleadings themselves* indicated that all Surfacesys work had been completed or that the floor had been put to its intended use.[45]

Peerless points to some precedent suggesting that the Court may consider certain extrinsic evidence in determining whether the intended use provision took the *Arias* claims outside the scope of Surfacesys's CGL coverage. However, even in those cases it is clear that such extrinsic evidence must be "unrelated to the merits of the underlying tort action" and "plainly take the claim outside of policy coverage."[46] The state of Surfacesys's Hyatt Project operations at the time of the accident obviously was integral to the claims against both defendants in *Arias*.

As with its analog, "ongoing operations," "operations . . . completed" is undefined in the policy, as is "intended use."[47] Nonetheless, Peerless strains to construct unnaturally broad

---

[44]
        *City of Kingston v. Harco Nat'l Ins. Co.*, 848 N.Y.S.2d 455, 457 (2007) (internal quotation marks and brackets omitted); *see Cincinnati Ins. Co. v. Roy's Plumbing, Inc.*, 692 F. App'x 37, 38 (2d Cir. 2017).

[45]
        *See Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65 (1991).

[46]
        *See Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004); *Peleus Ins. Co. v. Atl. State Dev. Corp.*, No. 20 CIV. 2971 (JPC), 2022 WL 562357, at *4 (S.D.N.Y. Feb. 24, 2022).

[47]
        *See Yangtze Realty, LLC v. Sirius Am. Ins. Co.*, 934 N.Y.S.2d 480, 480-81 (2011) ("The duty to defend is not triggered . . . 'when the only interpretation of the allegations against the insured is that the factual predicate for the claim falls wholly within a policy exclusion.'") (quoting *Glob. Const. Co., LLC v. Essex Ins. Co.*, 52 A.D.3d 655, 656 (2008)). The Court agrees with Peerless that these exclusions must have distinct meanings, as "[c]onstruing the

17

interpretations of those terms. Its interpretation of "completed operations" is informed by a range of extrinsic evidence reflecting individual Stoncor or Surfacesys employees' views as to when a Stoncor installation job is considered complete. It suggests, for example, that the exclusion applies where work is "substantially done," a standard drawn from Mr. Cameron's testimony that Stoncor's "Project Finish Form" may be completed even though "punch list items" remain.[48] Peerless certainly has not argued that this is the *only* reasonable interpretation of the exclusion. More restrictive interpretations obviously are tenable. In any event, the *Arias* complaint did not cast the state of Surfacesys's Hyatt Project operations as substantially complete at the time of the accident.

With respect to "intended use," Peerless does argue that the allegations in the *Arias* complaint did cast the pleadings wholly within that exclusion, principally on the theory they state that Mr. Arias was "lawfully traversing" the floor when he fell. As plaintiff pointed out in its summary judgment papers and at trial, however, Peerless's interpretation of "intended use" would negate the duty to defend no matter when a Grand Hyatt employee were to fall on an unfinished surface – indeed, even on the day Surfacesys's work began. In contrast, plaintiff argues that the intended use exclusion "must be read to connote that all the necessary installation work is complete."[49] Regardless, it suffices here to conclude that plaintiff's interpretation is among multiple reasonable ones for which there is some factual basis upon which a court could determine that

---

Intended Use Provision the same as [sic] the 'ongoing operations' provision would make it duplicative and superfluous." Dkt 190, at 35. But the "completed operations" and "intended use" carve-outs easily are distinguished in that the former requires that "all work" be completed, meanwhile the latter applies where any "portion" of the work has been put to "intended use." The Court need look no further to avoid giving these exclusions duplicative meanings.

[48]    Dkt 190, at 16-19; Cameron Dep. at 48-50.

[49]    Dkt 172, at 4.

Peerless owes indemnification to Stoncor on the allegations against it.

Peerless makes much of the fact that this Court previously declared that there were triable issues of fact "as to whether Stoncor's and Surfacesys' operations were complete . . . prior to the *Arias* case" in its 2018 Order denying cross-motions for summary judgment. It seemingly suggests that the Order itself proves that Peerless can defeat the duty to defend if it can prove here that Surfacesys's Hyatt Project operations in fact were complete."[50] However, the Court made that ruling when indemnity was still at issue, prior to the First Department's 2020 *Arias* decision and referral to the Magistrate Judge. Subsequent briefing and trial have made clear that whether the *Arias* claims fell within the scope of Stoncor's coverage as an additional insured turns on the fit between the *Arias* pleadings and the domain of reasonable interpretations of the Surfacesys policy — not the actual state of operations at the time of the accident. Here, Peerless cannot meet the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within an exclusion without referring to extrinsic evidence that goes directly to the merits of what Mr. Arias alleged.

*Peerless's Laches Defense Plainly Lacks Merit*

By agreeing to First Continental's amendment substituting the equitable contribution claim for breach of contract, Peerless gained the opportunity to assert equitable defenses. The equitable defense of laches is meritorious only where the party asserting it shows that "the plaintiff has inexcusably slept on its rights so as to make a decree against the defendant unfair" as well as

---

[50] *See* Trial Tr. at 31 ("Your Honor already determined in denying summary judgment that there's an issue of fact. If your Honor felt that [Plaintiffs] satisfy their burden of proof based on the four corners of the complaint, I don't think we would be here today.").

"prejudice[] by the plaintiff's unreasonable delay in bringing the action."[51]   The Court already has found that Peerless had actual notice of Stoncor's demand at least as early as May 2008, and it is well established that a "demand in equity is never stale during that period in which, were it a legal demand, it would not be barred by the statute of limitations."[52]   Neither has Peerless alleged prejudice. Indeed, if any evidentiary prejudice is to be found here on account of delay, it surely has been suffered by First Continental on account of Surfacesys losing or destroying Hyatt Project records at a time when it knew it still was a defendant in *Arias*.[53]   Accordingly, even if laches were available on these facts, the Court would decline to exercise its discretion to bar recovery on that ground.[54]

### Conclusion

For the foregoing reasons, the Court finds that Peerless is liable to First Continental for the legal fees, expenses and costs of defending Stoncor in *Arias*.[55]   As the damages portion of

---

[51]

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003) (citations and internal quotations marks omitted).

[52]

*Wagner v. Baird*, 48 U.S. 234, 247 (1849).

[53]

*See* Trial Tr. at 31-35. At trial, Peerless's counsel admitted that had Stoncor sued for coverage in 2011, "[Peerless] would have these documents." *Id.* at 33.

[54]

*Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V.*, 17 F.3d 38, 44 (2d Cir. 1994) ("The determination of whether laches bars a plaintiff from equitable relief is entirely within the discretion of the trial court."). The Court notes also that Peerless was not prejudiced by its inability to raise laches earlier in the litigation in its attempts to "tr[y] to keep out . . . evidence that the job was not complete," since such evidence is immaterial to whether the *Arias* pleadings triggered a duty to defend. Trial Tr. at 10-11.

[55]

There is no dispute as to Peerless's priority of coverage. *See* Dkt 170 at 3-4.

this action was severed from the trial as to liability,[56] the case shall be referred back to the Magistrate Judge for a report and recommendation as to the proper damages amount.

The Court has considered all of the deposition testimony and other evidence the admissibility of which was placed in issue by the parties at the trial. The foregoing are the Court's findings of fact and conclusions of law. To the extent they may be inconsistent with any of the disputed evidence, they reflect the fact that the Court found that evidence either immaterial or unpersuasive.

SO ORDERED.

Dated:        August 26, 2022

Lewis A. Kaplan
United States District Judge

---

[56]     Dkt 122.